# EXHIBIT C

# 13-1837(L)

# 13-1917(CON)

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

---

UNITED STATES OF AMERICA
Appellee,

v.

TODD NEWMAN, ANTHONY CHIASSON
Defendants-Appellants,

JON HORVATH, DANNY KUO, HYUNG G. LIM, MICHAEL STEINBERG,
Defendants.

---

On Appeal from United States District Court for the Southern District of New York, No. 12-cr-121 (RJS)

---

## BRIEF FOR THE SECURITIES AND EXCHANGE COMMISSION AS AMICUS CURIAE SUPPORTING THE PETITION OF THE UNITED STATES FOR REHEARING OR REHEARING EN BANC

---

ANNE K. SMALL
General Counsel

MICHAEL A. CONLEY
Deputy General Counsel

JACOB H. STILLMAN
Solicitor

DAVID D. LISITZA
Senior Litigation Counsel

Securities and Exchange Commission
100 F. Street, N.E.
Washington, D.C. 20549-9040
(202) 551-5015 (Lisitza)

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 3

A. Insider trading and tipping .......... 3

B. A gift of inside information to a friend who profitably trades on the tip constitutes a personal benefit to the tipper because of the prohibition on committing a violation through another person. .......... 5

C. The defendants are tippees who traded on inside information that insiders disclosed to friends .......... 6

D. The panel ruled that the evidence of friendship between the tippers and the tippee defendants was not a sufficient basis for inferring that the tippers derived the requisite personal benefit from their tipping.. .......... 7

DISCUSSION .......... 8

I. Rehearing regarding the panel's definition of a tipper's personal benefit is necessary to avoid conflict with governing precedent and decisions of other courts of appeals and to resolve additional uncertainty created by the panel decision's analysis of the personal benefit requirement. .......... 8

II. The Court should grant rehearing because the panel's narrowed approach to the personal benefit requirement could impair meritorious SEC enforcement actions. .......... 11

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## CASES

*In the Matter of Cady, Roberts & Co.*, 40 S.E.C. 907 (1961) .......................................3, 8, 13

*Chiarella v. United States*, 445 U.S. 222 (1980)................................................................ 3

*Dirks v. SEC*, 463 U.S. 646 (1983).......................................... 1, 3, 4, 5, 7, 8, 9, 12, 13, 14

*Hernandez v. CIR*, 490 U.S. 680 (1989) ................................................................... 11

*In re Lohmann*, Release No. 34-48092, 56 S.E.C. 573, 2003 WL 21468604 (2003) ......... 5

*SEC v. Breed*, No. 01-7798, 2004 WL 909170 (S.D.N.Y. April 29, 2004)...................... 12

*SEC v. Clark*, 915 F.2d 439 (9th Cir. 1990).................................................................. 10

*SEC v. Conradt*, 947 F. Supp. 2d 406 (S.D.N.Y. 2013).................................................... 12

*SEC v. Cuban*, 620 F.3d 551 (5th Cir. 2010)................................................................ 10

*SEC. v. Drescher*, No. 99-1418, 1999 WL 946864 (S.D.N.Y. Oct. 19, 1999) ................ 12

*SEC v. Drucker*, 528 F. Supp. 2d 450 (S.D.N.Y. 2007).................................................... 12

*SEC v. Farrell*, No. 95-6133, 1996 WL 788367 (W.D.N.Y. Nov. 6, 1996)................... 12

*SEC v. McGinnis*, No. 13-1047, 2013 WL 6500268 (D. Conn. Dec. 11, 2013)............ 12

*SEC v. Musella*, 748 F. Supp. 1028 (S.D.N.Y. 1989)..............................................12, 13

*SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012)............................................1, 2, 4, 5, 9, 12, 13

*SEC v. Palermo*, No. 99-10067, 2001 WL 1160612 (S.D.N.Y. Oct. 2, 2001)................ 12

*SEC v. Rocklage*, 470 F.3d 1 (1st Cir. 2006)................................................................ 10

*SEC v. Seibald*, No. 95-2081, 1997 WL 605114 (S.D.N.Y. Sept. 30, 1997) .................. 12

*SEC v. Svoboda*, 409 F. Supp. 2d 331 (S.D.N.Y. 2006)................................................... 12

## TABLE OF AUTHORITIES (CONTINUED)

*SEC v. Warde*, 151 F.3d 42 (2d Cir. 1998) .................................................... 2, 5, 9, 12, 13

*SEC v. Yun*, 327 F.3d 1263 (11th Cir. 2003) ................................................................ 10

*United States v. Evans*, 486 F.3d 315 (7th Cir. 2007) ........................................................ 10

*United States v. Jiau*, 734 F.3d 147 (2d Cir. 2013) ..............................................2, 5, 7, 9, 11

*United States v. O'Hagan*, 521 U.S. 642 (1997) ........................................................... 13, 14

### STATUTES AND RULES

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*

Section 10(b), 15 U.S.C. § 78j(b) ....................................................... 1, 3, 4, 6, 9, 15

Section 20(b), 15 U.S.C. § 78t(b)..........................................................1, 3, 4, 9, 13

Rules under the Securities Exchange Act, 17 C.F.R. §§ 240.0-1, *et seq.*

Rule 10b-5, 17 C.F.R. § 240.10b-5.........................................................1, 3, 4, 6, 15

Rule 10b5-1(b), 17 C.F.R. § 240.10b5-1(b) ........................................................... 3

Fed. R. Crim. P. 29 ............................................................................................... 7

Fed. R. App. P. 29(a) ............................................................................................ 1

### OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009) ..................................................................... 11

## PRELIMINARY STATEMENT

The Securities and Exchange Commission, the agency responsible for the civil enforcement of the federal securities laws, submits this brief as amicus curiae pursuant to Fed. R. App. P. 29(a) to address the proper interpretation of the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

The SEC agrees with the petition of the United States that rehearing is necessary to avoid conflict with the Supreme Court's and this Court's precedents regarding the prohibition on insider trading and to resolve uncertainty created by the panel decision about the requirements for establishing violations of that prohibition.

In particular, the panel decision states that evidence of friendship between an insider who tips and his tippee is insufficient to support an inference that the insider derived a personal benefit from the tipping—a requirement for liability. That ruling is directly at odds with Supreme Court and prior Second Circuit decisions holding that an insider derives a personal benefit—and thus engages in prohibited insider trading—by disclosing inside information to a friend who then trades, because that is equivalent to the insider himself profitably trading on the information and then giving the trading profits to the friend, which is obviously illegal. See *Dirks v. SEC*, 463 U.S. 646, 659, 663-64 (1983) (citing Exchange Act Section 20(b), 15 U.S.C. § 78t(b), which prohibits securities law violations committed indirectly through another person); *SEC*

*v. Obus*, 693 F.3d 276, 285 (2d Cir. 2012); *SEC v. Warde*, 151 F.3d 42, 48-49 (2d Cir. 1998); *United States v. Jiau*, 734 F.3d 147, 153 (2d Cir. 2013).

The panel decision also creates uncertainty about the precise type of benefit that the panel believes an insider who tips confidential information must receive to be liable. Some passages in the decision suggest that certain non-pecuniary benefit to the insider is a sufficient predicate for liability, but others could be read to require some form of a pecuniary gain in exchange for disclosing the information. Rehearing is warranted to remove any confusion about the applicable standard.

Rehearing is also warranted because these conclusions of the panel on the tipper benefit requirement involve an issue of exceptional importance. The panel's narrowed definition of personal benefit and lack of clarity about the evidence required for establishing such benefit could negatively affect the SEC's ability to bring insider trading actions. Any such weakening of the SEC's ability to effectively police and deter insider trading could undermine investor confidence in the fairness and integrity of the securities markets.

On rehearing, the Court should reject the panel's holding that evidence of friendship is inadequate to establish the required benefit and should clarify the requirements for liability. Alternatively, the Court should amend the opinion by deleting the portions containing these statements.

## Background

### A. Insider trading and tipping

Insider trading is a "deceptive device" prohibited by Section 10(b) and Rule 10b-5. Under the "classical theory" of insider trading, a corporate insider violates these antifraud provisions by trading on the basis of confidential information—trading that deceptively violates the duty of trust and confidence owed by insiders to the corporation's uninformed shareholders with whom they trade. *Chiarella v. United States*, 445 U.S. 222, 228 (1980). See also Exchange Act Rule 10b5-1(b), 17 C.F.R. § 240.10b5-1(b) (defining trading on the basis of inside information). Indeed, "[a] significant purpose of the Exchange Act was to eliminate the idea that use of inside information for personal advantage was a normal emolument of corporate office." *Dirks*, 463 U.S. at 653 n.10 (quoting *In the Matter of Cady, Roberts & Co.*, 40 S.E.C. 907, 912 n.15 (1961)).

Tipping—disclosing inside information to another person—likewise violates Section 10(b) and Rule 10b-5. Just as insiders are forbidden from themselves trading on the confidential information "to their advantage," they also "may not give such information to an outsider for the same improper purpose of exploiting the information for [the insiders'] personal gain." *Dirks*, 463 U.S. at 659. It is unlawful for the insider to do "indirectly" through disclosing inside information to "any other person" what the insider cannot do directly by trading on that information. *Id.* (quoting Exchange Act Section 20(b), 15 U.S.C. 78t(b), which provides that "[i]t shall

be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.").

Both tippers and tippees may be held liable. An insider is civilly liable under Section 10(b) and Rule 10b-5, even if he does not personally trade on the basis of inside information, if he knows or is reckless in not knowing the information is material and nonpublic, and discloses the information in breach of a duty of trust and confidence for a "direct or indirect personal benefit." *Obus*, 693 F.3d at 286-87 (applying *Dirks*).

A tippee—a person who receives inside information—is civilly liable if, by tipping, the insider breached a duty of trust and confidence for a direct or indirect personal benefit; the tippee knows or should know of that breach; the tippee knows or is reckless in not knowing the information is material and nonpublic; and the tippee either discloses the information to an additional person or trades on the basis of that information. See *Obus*, 693 F.3d at 287-88 (applying *Dirks*).

Absent a showing that the insider received a "direct or indirect personal benefit" from disclosing inside information to the initial tippee, neither the insider nor any tippee can be held liable under Section 10(b) and Rule 10b-5 because there is "no breach" of trust or confidence by the insider, and "no derivative breach" by any tippee. *Dirks*, 463 U.S. at 662-64.

Case 13-1837, Document 298, 01/29/2015, 1425475, Page 9 of 19

### B. A gift of inside information to a friend who profitably trades on the tip constitutes a personal benefit to the tipper because of the prohibition on committing a violation through another person.

Whether the insider received a direct or indirect personal benefit from tipping is a "question of fact." *Dirks*, 463 U.S. at 664. An inference that an insider received a "direct or indirect personal benefit" from disclosing inside information is "justif[ied]" where there is "a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter, or an intention to benefit the particular recipient." *Dirks*, 463 U.S. at 663-64 (emphasis added); accord *Jiau*, 734 F.3d at 153. One example of a *quid pro quo* is the tippee's payment to the insider for the information, yielding the insider a direct "pecuniary gain." *Dirks*, 463 U.S. at 663-64. But the requisite tipper benefit "also exist[s]" where the insider has an "intention to benefit the particular recipient," such as "when an insider makes a gift of confidential information to a trading relative or friend. The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient." *Id.* at 659, 663-64 (applying Exchange Act Section 20(b)); accord *Obus*, 693 F.3d at 285; *Warde*, 151 F.3d at 48-49. The Commission has long held the position that *Dirks* does not require the insider to obtain an "economic benefit from the tip," and that "[i]t is sufficient" if the insider '"makes a gift of confidential information to a trading relative or friend.'" *In re Lohmann*, Release No. 34-48092, 56 S.E.C. 573, 2003 WL 21468604, at *4 (2003) (quoting *Dirks*, 463 U.S. at 664).

### C. The defendants are tippees who traded on inside information that insiders disclosed to friends.

The indictment here alleged that, under the classical theory, two insiders derived a personal benefit from disclosing information in breach of their duty of confidence to shareholders; this inside information was passed along a chain of three or four tippees, concluding with defendants Todd Newman and Anthony Chiasson; and Newman and Chiasson, knowing that the insiders' disclosure violated a duty of confidence, profitably traded securities on the basis of the inside information. See Appellate Dkt. 118 at A.148-168.

With regard to the personal benefit the insiders derived from tipping, the evidence at trial established that one insider (Chris Choi) had disclosed material nonpublic information to a "'family friend[]' that [he] had met through church." Op. 21. The other insider (Rob Ray) disclosed information to a tippee he had known "for years, having both attended business school and worked at Dell together." *Id.* "Ray and [the tippee] were also friends. * * * They knew each other's wives, talked about going on family vacations together, and spoke frequently on the telephone, late at night, often for lengthy periods of time." Brief for the United States, Appellate Dkt. 179 at 16.

After a six-week trial, a jury found defendants Newman and Chiasson guilty on multiple counts of insider trading in violation of Exchange Act Section 10(b) and Rule 10b-5, and conspiracy to commit insider trading. Op. 8. The district court denied

their motions for judgment of acquittal under Fed. R. Crim. P. 29; sentenced Newman to 54 months' imprisonment and Chiasson to 78 months' imprisonment; and ordered both to pay a criminal fine and forfeiture. *Id.*

### D. The panel ruled that the evidence of friendship between the tippers and the tippee defendants was not a sufficient basis for inferring that the tippers derived the requisite personal benefit from their tipping.

Although the panel acknowledged that "'[p]ersonal benefit is broadly defined to include not only pecuniary gain, but also, *inter alia*, . . . the benefit one would obtain from simply making a gift of confidential information to a trading relative or friend,'" (Op. 21, quoting *Jiau*, 734 F.3d at 153), the panel concluded that the government may not "prove the receipt of a personal benefit by the mere fact of a friendship." Op. 21. Instead, the panel concluded that an inference that the insider received a personal benefit from tipping is "impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." Op. 22. It further stated that "this requires evidence of 'a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter, or an intention to benefit the [latter].'" Op. 22 (quoting *Jiau*, 734 F.3d at 153) (emphasis added); see also *Dirks*, 463 U.S. at 663-64.

Applying these conclusions, the panel found that no rational jury could have determined that the insiders here received a personal benefit in exchange for

disclosing material nonpublic information. Op. 21-23. The panel found that the friends to whom the insiders disclosed information "did not provide anything of value * * * in exchange for the information." Op. 23.

## DISCUSSION

### I. Rehearing regarding the panel's definition of a tipper's personal benefit is necessary to avoid conflict with governing precedent and decisions of other courts of appeals and to resolve additional uncertainty created by the panel decision's analysis of the personal benefit requirement.

A. Rehearing is warranted because the panel's conclusion that the government cannot justify an inference of the insider's personal benefit by showing that the insider tipped his friend (Op. 21) is squarely contrary to governing precedent and to the law in other circuits.

While the Supreme Court in *Dirks* held that a "*quid pro quo*" that provides the insider a direct "pecuniary gain" from disclosure can establish the required personal benefit (463 U.S. at 663-64), *Dirks* further held that a personal benefit "also exist[s] when an insider makes a gift of confidential information to a trading relative or friend." *Dirks*, 463 U.S. at 663-64 (emphasis added). In both circumstances, the insider's disclosure achieves the "same improper purpose": the exploitation of "corporate" information for "personal" benefit. *Id.* at 659; see also *id.* at 662 (discussing *Cady Roberts*, 40 S.E.C. at 912 n.15). *Dirks* explained that when an insider "makes a gift of confidential information to a trading relative or friend," that is equivalent to the "trading by the insider himself followed by a gift of the profits to the

recipient." *Id.* at 663-64. Applying Exchange Act Section 20(b), *Dirks* reasoned that tipping a friend thus accomplishes indirectly what the insider cannot do directly by trading. *Id.* at 659. The panel decision does not cite Section 20(b) or discuss *Dirks*'s analysis of that provision.

This Court likewise has held that a "personal benefit to the tipper" includes "not only 'pecuniary gain,' such as a cut of the take or a gratuity from the tippee, but also . . . the benefit one would obtain from simply 'mak[ing] a gift of confidential information to a trading relative or friend.'" *Obus*, 693 F.3d at 285 (quoting *Dirks*, 463 U.S. at 663-64); see also *id.* at 291 (The fact that the tipper and tippee were "friends" is "sufficient to send to the jury the question of whether [the tipper] received a benefit from tipping."); accord *Warde*, 151 F.3d at 48-49 (concluding that the "close friendship between [the insider] and [the recipient of the tip] suggests that [the] tip was 'inten[ded] to benefit' [the recipient], and therefore allows a jury finding that [the] tip breached a duty under § 10(b)") (quoting *Dirks*, 463 U.S. at 664); *Jiau*, 734 F.3d at 153 (concluding that a tipper obtains a personal benefit if he has "an intention to benefit the [recipient]," such as by "mak[ing] a gift of confidential information to a trading relative or friend").

The panel's holding also conflicts with the decisions of all other courts of appeals that have considered the issue. No other court of appeals has concluded that a friendship between the tipper and tippee is an insufficient basis from which to infer the required personal benefit—all the courts of appeals that have addressed this issue

conclude otherwise. See *SEC v. Rocklage*, 470 F.3d 1, 7 n.4 (1st Cir. 2006) ("[T]he mere giving of a gift to a relative or friend is a sufficient personal benefit."); *SEC v. Cuban*, 620 F.3d 551, 557 n.38 (5th Cir. 2010) ("[A] gift to a trading friend or relative" could "suffice to show the tipper personally benefitted."); *United States v. Evans*, 486 F.3d 315, 321-23 (7th Cir. 2007) ("[T]he concept of gain is a broad one, which can include a gift of confidential information to a trading relative or friend."); *SEC v. Clark*, 915 F.2d 439, 454 (9th Cir. 1990) (tipper cannot "eva[de] Rule 10b-5 liability by <u>either</u>: (1) enriching a friend or relative; <u>or</u> (2) tipping others with the expectation of reciprocity") (emphasis added); *SEC v. Yun*, 327 F.3d 1263, 1275 (11th Cir. 2003) ("The gain does not always have to be pecuniary. * * * [A] gift to a trading friend or relative [can] suffice to show that the tipper personally benefitted.").

B. Rehearing is also warranted because—even apart from the panel's erroneous holding that evidence of friendship is insufficient to infer the required personal benefit—the opinion's unclear discussion of the evidence required to support an inference that a tipper derived such a benefit likely will lead to confusion about the governing standard.

The decision includes language acknowledging that a non-pecuniary benefit to the tipper can be a sufficient predicate for liability; it states that an inference of personal benefit is permissible where the evidence shows that the tipping is part of "an exchange that . . . represents at least a potential gain of a pecuniary <u>or similarly valuable nature</u>" (Op. 22 (emphasis added)) or where the evidence shows a

relationship between the insider and his tippee "'that suggests . . . an intention to benefit [the tippee]'" (*id.*, quoting *Jiau,* 734 F.3d at 153). But the panel decision then goes on to state that although "the tipper's gain need not be *immediately* pecuniary . . . the personal benefit received in exchange for confidential information must be of some consequence." Op. 22 (emphasis in original). As examples, the panel decision discusses three cases, in all of which the personal benefit involved possible "future pecuniary gain." Op. 22-23.

To the extent the decision could be read to require some form of a pecuniary exchange, it would be directly at odds with the Supreme Court, Second Circuit, and other court of appeals decisions holding that the insider's "gift" of confidential information intended to benefit a friend suffices. See *Hernandez v. CIR*, 490 U.S. 680, 687 (1989) (a "gift" is a transfer "without consideration therefor"); Black's Law Dictionary (9th ed. 2009) (a "gift" is a "voluntary transfer of property to another without compensation"). At a minimum, the panel decision's discussion of the evidence necessary to establish personal benefit is unclear and likely will lead to confusion if not addressed on rehearing.

## II. The Court should grant rehearing because the panel's narrowed approach to the personal benefit requirement could impair meritorious SEC enforcement actions.

The petition for rehearing presents an issue of exceptional importance, because the panel decision could negatively affect the SEC's ability to protect investors and the markets through meritorious insider trading enforcement actions against both

tippers and tippees. See *Dirks*, 463 U.S. at 662 (absent some personal gain to the tipper there is no liability for any tippee).

A. The panel decision could impede enforcement actions based on tippers' unlawful disclosure of inside information to friends. The SEC has litigated numerous insider trading claims in this circuit where the only personal benefit to the tipper apparent from the decisions was providing inside information to a friend. See *SEC v. Warde*, 151 F.3d at 48-49 (affirming jury verdict and relief); *SEC v. Obus*, 693 F.3d at 285, 290-91 (reversing summary judgment in favor of defendants); *SEC v. McGinnis*, No. 13-1047, 2013 WL 6500268, at *2 (D. Conn. Dec. 11, 2013) (granting preliminary injunction); *SEC v. Conradt*, 947 F. Supp. 2d 406, 407-409 (S.D.N.Y. 2013) (denying motion to dismiss); *SEC v. Drucker*, 528 F. Supp. 2d 450, 452-53 (S.D.N.Y. 2007), *aff'd*, 346 Fed.Appx. 663 (2d Cir. 2009) (granting relief); *SEC v. Svoboda*, 409 F. Supp. 2d 331, 337 (S.D.N.Y. 2006) (granting summary judgment and relief); *SEC v. Breed*, No. 01-7798, 2004 WL 909170, at *1 (S.D.N.Y. April 29, 2004) (granting relief); *SEC v. Palermo*, No. 99-10067, 2001 WL 1160612, at *1, *7 (S.D.N.Y. Oct. 2, 2001) (denying defendant's motion for summary judgment); *SEC. v. Drescher*, No. 99-1418, 1999 WL 946864, at *2-*4 (S.D.N.Y. Oct. 19, 1999) (denying motion to dismiss); *SEC v. Seibald*, No. 95-2081, 1997 WL 605114, at *2, *6 (S.D.N.Y. Sept. 30, 1997) (denying defendant's motion for summary judgment); *SEC v. Farrell*, No. 95-6133, 1996 WL 788367, at *3, *7 (W.D.N.Y. Nov. 6, 1996) (granting summary judgment and relief); *SEC v. Musella*, 748 F. Supp. 1028, 1038 n.4 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d

Cir. 1990) (granting judgment and relief after bench trial). This list does not include such civil enforcement actions in this circuit that were settled, which are greater in number. The panel decision's narrowed personal benefit standard could, depending on its application, limit the SEC's ability to pursue similar violators in this circuit in future cases.

Moreover, to the extent the decision creates confusion about what constitutes a personal benefit (see *supra* at 10-11), such uncertainty could make it difficult to consistently enforce the insider trading prohibition in all tipping cases.

B. Enforcement actions based on the disclosure of inside information to friends are meritorious. Where the insider "makes a gift of confidential information to a trading relative or friend," that is equivalent to "trading by the insider himself followed by a gift of the profits to the recipient." *Dirks*, 463 U.S. at 663-64; accord *Obus*, 693 F.3d at 285; *Warde*, 151 F.3d at 48-49. Tipping a friend thus accomplishes indirectly what the insider cannot do directly by trading. See *Dirks*, 463 U.S. at 659, discussing Exchange Act Section 20(b). Whether the insider who discloses a corporation's material nonpublic information receives a direct "cut of the take" from his friend's trading (*Obus*, 693 F.3d at 285), or makes a gift of information to a friend he intends or reasonably expects will trade, the insider obtains an unlawful "personal advantage" from a "corporate asset[]." *Dirks*, 463 U.S. at 653 n.10 (quoting *Cady Roberts*, 40 S.E.C. at 912 n.15). And in both circumstances, the disclosure and trading on inside information undermines "honest securities markets" and "investor

confidence" because an investor's "informational disadvantage" vis-à-vis the tippee "stems from contrivance, not luck; it is a disadvantage that cannot be overcome with research or skill." *United States v. O'Hagan*, 521 U.S. 642, 658-59 (1997).

The Supreme Court concluded in *Dirks* that whether a tipper personally benefits is a "question of fact" (463 U.S. at 664), but the panel decision engrafts on this inquiry new and indeterminate legal requirements. The panel requires a "meaningfully," "close," "personal" relationship between an insider who tips and his tippee that demonstrates an exchange that is "objective" and "consequential" (Op. 22)— terms that are not susceptible to a definite legal meaning. It is at best uncertain how courts would determine the evidence necessary to satisfy such a standard and then fashion instructions to guide the jury's determination of the issue.

The SEC properly is not required to show that the insider received from his friend a pecuniary benefit "in exchange for confidential information" (Op. 22) because insiders can improperly "exploit[ ] the information for their personal gain" without obtaining a pecuniary benefit in return for the information. *Dirks*, 463 U.S. at 659. Giving the valuable information to another person for securities trading purposes is itself an improper exploitation of the information by the insider, regardless of whether the transfer is motivated by an expectation of a *quid pro quo*, if there is an "intention to benefit the particular recipient." *Id.* at 664.

Nor should the SEC's enforcement actions be confined to cases where there is a "history of loans or personal favors between" the insider and tippee. Op. 23. While

such a history may bolster an inference that the insider received a personal advantage from tipping, it is not essential. Just as the first time an insider receives cash for divulging confidential information there is a violation of Section 10(b) and Rule 10b-5, these provisions are violated the first time an insider divulges confidential information to a friend he intends or reasonably expects will trade.

## CONCLUSION

For the foregoing reasons, the petition for rehearing or rehearing en banc should be granted.

Respectfully submitted,

ANNE K. SMALL
General Counsel

MICHAEL A. CONLEY
Deputy General Counsel

JACOB H. STILLMAN
Solicitor

/s/ DAVID D. LISITZA
DAVID D. LISITZA
Senior Litigation Counsel
Securities and Exchange Commission
100 F. Street, N.E.
Washington, D.C. 20549-9040
(202) 551-5015 (Lisitza)

January 2015