**EXHIBIT I**

Gary P. Naftalis
Stephen M. Sinaiko
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Rajat K. Gupta

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                :

UNITED STATES OF AMERICA        No. 11 Cr. 907 (JSR)
                :
        - against -            ECF Case
                :
RAJAT K. GUPTA,           Declaration of Stephen M. Sinaiko
                :
           Defendant.
                :
———————————————————— x

Stephen M. Sinaiko, pursuant to 28 U.S.C. § 1746, declares as follows:

1.     I am a member of Kramer Levin Naftalis & Frankel LLP, attorneys for defendant Rajat K. Gupta in this action, and respectfully submit this declaration in support of Mr. Gupta's motion for an order dismissing Count Two of the superseding indictment for failure sufficiently to allege an offense, pursuant to Fed. R. Crim. P. 7(c); striking prejudicial surplusage from the superseding indictment, pursuant to Fed. R. Crim. P. 7(d); and directing the government to produce a bill of particulars, pursuant to Fed. R. Crim. P. 7(f). The sole purpose of this declaration is to place before the Court true copies of documents relevant to the disposition of Mr. Gupta's motion.

2.     Attached as Exhibit A is a true copy of the transcript of proceedings before the Court in this action on January 5, 2012.

3.      Attached as Exhibit B is a true copy of the original indictment in this action, filed on October 25, 2011.

4.      Attached as Exhibit C  is a true copy of the superseding indictment in this action, filed on January 31, 2012.

5.      Attached as Exhibit D is a true copy of the transcript of proceedings before the Court in this action on February 7, 2012.

6.      Attached as Exhibit E is a true copy of an order dated July 24, 2005 in *United States v. Solovey*, No. 04-cr-244S (W.D.N.Y.).

7.      Attached as Exhibit F is a true copy of Mr. Gupta's request for particulars dated November 17, 2011.

8.      Attached as Exhibit G is a true copy of Mr. Gupta's request for particulars with respect to the superseding indictment, filed on February 2, 2012.

9.      Attached as Exhibit H is a true copy of the government's response, dated February 6, 2012, to Mr. Gupta's February 2, 2012 request for particulars.

\*      \*      \*      \*

10.     For the reasons set forth in our accompanying memorandum of law, we respectfully request that the Court grant Mr. Gupta's motion in full.

11.     I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       February 21, 2012

                                        /s/ Stephen M. Sinaiko
                                        Stephen M. Sinaiko

KL3 2865485.1

# EXHIBIT  A

1

```
1215egupc
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   UNITED STATES OF AMERICA,           New York, N.Y.
 3
 4              v.                       11 CR 907(JSR)
 4
 5   RAJAT GUPTA,
 5
 6                   Defendant.
 6
 7   ------------------------------x
 7
 8
 8                                       January 5, 2012
 9                                       3:25 p.m.
 9
10
10   Before:
11
11                      HON. JED S. RAKOFF,
12
12                                       District Judge
13
13
14                        APPEARANCES
14
15   PREET BHARARA
15        United States Attorney for the
16        Southern District of New York
16   BY:  REED M. BRODSKY
17        RICHARD TARLOWE
17        Assistant United States Attorneys
18
18   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
19        Attorneys for Defendant
19   BY:  GARY P. NAFTALIS
20        DAVID S. FRANKEL
20        ROBIN WILCOX
21
22
23
24
25
```

1215egupc

```
 1                (In open court)
 2                THE DEPUTY CLERK:  Will the parties please identify
 3     themselves for the record and be seated.
 4                MR. TARLOWE:  Good afternoon, your Honor.  Richard
 5     Tarlowe and Reed Brodsky for the government.  Also with us at
 6     counsel table is Sean Fernandez, a paralegal in our office.
 7                MR. NAFTALIS:  Good afternoon, your Honor.  Gary
 8     Naftalis for Mr. Gupta, and David Frankel and Robin Wilcox with
 9     me at the table.
10                THE COURT:  Good afternoon.
11                All right.  So I just want to make clear so no one is
12     under any misapprehension, a number of motions have been filed
13     by the defendant.  No responses have been filed by the
14     government because they were not required to file any responses
15     at this time.
16                My practice is that after the defense files their
17     motions, we then convene a conference; that's today's
18     conference.  And if there are motions that can be dealt with
19     simply as a matter of oral argument, they will be.  But if
20     there are motions that require a written response, then we will
21     have the written response, and only then will I resolve the
22     motions.
23                I mention that because I think there are probably some
24     motions here today that may require a written response.  But
25     the first of the motions, taken in no particular order, is a
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    motion to dismiss or consolidate certain allegedly

2    multiplicitas counts.

3          And before we get into that, the government in a joint

4    telephone conference with the Court and defense counsel some

5    weeks ago indicated that if there was to be a superseding

6    indictment, it would be filed by the end of January.

7          So let me ask the government:  Is there going to be a

8    superseding indictment, assuming the grand jury votes one?

9          MR. TARLOWE:  Final decision on that has not been

10   made.  I think it's fair to say it's more likely than not that

11   there will be a superseding indictment.

12         THE COURT:  Okay.  So it seems to me -- I'm not sure

13   that as a matter of law these counts are multiplicitas, but I

14   also -- it seems to me that maybe it doesn't make that much

15   sense to have these trades that really derive from the same

16   conversation allegedly broken into several different counts.

17   I'm not expressing more than simply some concern for

18   simplifying the case when it goes to the jury.  So the

19   government may want to take that into account in any

20   superseding indictment.  But I don't see any reason why I

21   should reach this motion now, if there is more likely than not

22   going to be a superseding indictment.

23         Assuming there is a superseding indictment, then the

24   government, if it wishes to be heard on this particular motion,

25   which -- I'm sorry.  Assuming there's a superseding indictment,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    and assuming it includes these same counts or ones that raise
2    the same basic issue, the government can then put in their
3    response in writing no later than the week after the
4    superseding indictment comes down.  And I will then resolve the
5    matter on the papers very promptly.
6           So is there anything anyone else wants to say on that
7    motion before we go to the next motion?
8           MR. NAFTALIS:  Assuming that the government doesn't
9    heed your Honor's suggestion by narrowing the charges and
10   continues to proceed and, therefore, file, could we have some
11   time to take a reply to their response?  Brief, brief, brief.
12          THE COURT:  Yeah.  Three business days after the
13   government's papers.
14          MR. NAFTALIS:  Thank you, your Honor.
15          THE COURT:  I must say, I do think this is a little
16   bit a tempest in a teapot either way, because from the way any
17   jury would look at it -- and assuming for the sake of argument
18   the way any sentencing judge would look at it -- it's not
19   really going to matter one way or the other.  That's not the
20   test.  The test is not an equitable one, if you will.  But it
21   didn't seem to me to be of that great moment one way or the
22   other.
23          Anything the government want to say?
24          MR. TARLOWE:  Just very briefly, your Honor.  I just
25   wanted to point out, there is a somewhat recent Second Circuit

1215egupc

```
 1    case from a few years ago, United States v. Josephberg that I
 2    think the defendants did not cite.  But in Josephberg the
 3    Second Circuit actually reversed a district court's pretrial
 4    dismissal of multiplicitas counts, holding that that issue
 5    really did not become ripe until after conviction, at which
 6    time the Court had been dealing with the double jeopardy issue
 7    by not entering judgment on the multiplicitas counts.  And so
 8    in light of that case, I think it's --
 9              THE COURT:  Well, you're saying that so on that theory
10    I should not only postpone it the way I just did, but I should
11    continue to postpone it for several months thereafter.
12              I'll look at that case.  I'm certainly grateful for
13    any help the Second Circuit can give me in avoiding having to
14    rule on anything.  So thank you.
15              MR. NAFTALIS:  See, this is the first they've
16    mentioned that, obviously, to us as well.  So if they could --
17    they don't have to do it now.  They could give us the citation
18    to that.
19              THE COURT:  Do you have the citation?
20              MR. TARLOWE:  I do.  It's 459 F.3d 350.
21              THE COURT:  Okay.
22              MR. NAFTALIS:  And that was not an insider trading
23    case, I take it?
24              MR. TARLOWE:  I believe that's correct.
25              THE COURT:  It's a little different, as I understand
```

1215egupc

1   the defense argument from the usually submission, if you had a
2   mail fraud scheme and you had 100 mailings all based on the
3   same false statement that the two conspirators had agreed to
4   put in the mailings, you could still have 100 counts.   That
5   would not be multiplicitas.

6          But here, as I understand it, there's a single tip.
7   And then just by happenstance, the trading was divided into
8   either two or, depending on the tip, a number of occasions as
9   opposed to it all could have been done as one on each of those
10  particular tips.  As I say, I don't have a strong feeling about
11  it, but I'm certainly glad that everyone is going to spin their
12  wheels on this.

13         So, the next motion, which I think we can deal with
14  orally today, is the motion to strike surplusage.  The specific
15  language that the defense wishes to strike is in paragraph
16  11(c) of the indictment, which says, quote, Rajaratnam in turn,
17  knowing that Gupta had disclosed the inside information to him
18  in violation of duties of trust and confidence, caused the
19  execution of transactions in the securities of Goldman Sachs,
20  P&G and other companies on the basis of the inside information,
21  etc.

22         And it's the words "and other companies" that the
23  defendant wishes to strike.  This is separate and apart from
24  whether as a matter of bill of particulars the defendant has a
25  right to know what those other companies are.  It's a question,

1215egupc

1   and under this motion, of whether that is surplusage.  It
2   doesn't certainly sound like surplusage or look like surplusage
3   as one normally sees it.
4           But let me hear from the government on this, and then
5   we'll hear from defense counsel in rebuttal.
6           MR. TARLOWE:  I think we agree with the Court's
7   assessment.  I think the cases say that surplusage should be
8   stricken if it's inflammatory or unfairly prejudicial.  It
9   doesn't seem to us that there is anything about that language
10  that is prejudicial in any way.
11          THE COURT:  Well, there's that.  That's number one.
12          And number two, though, there's the argument that if
13  there was no other companies presented to the grand jury, then
14  it was surplusage in the sense of going beyond what the grand
15  jury had a basis for voting.
16          MR. TARLOWE:  I think there are a couple of responses
17  to that.  I think, one, evidence was presented to the grand
18  jury, so their speculation on that point is just not accurate.
19          But also I think it sort of miscomprehends the
20  function of an indictment where there's a conspiracy charge.  I
21  think the law says an indictment doesn't even need to recite
22  any of the overt acts.  So certainly the government is not
23  limited at trial to presenting proof or evidence of only overt
24  acts that are specified in the indictment.
25          THE COURT:  No, that's right, but that's not the

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    point.  That would go to any objection if the indictment did
2    not say and other companies and you sought to produce evidence
3    of other companies.  And that would be an interesting issue in
4    itself.  That sort of relates to the bill of particulars issue.
5              But the issue in surplusage is not the argument that
6    you're making that you aren't required to put this in; it's the
7    argument having put it in, is it surplusage?  So, you know, if
8    a classic surplusage, as you point out, you know, is in
9    effect -- something like that Mr. Jones burnt down that
10   building.  Indeed, he lit a match and knowingly burned it down.
11   In fact, on the evening of January 4th, he completely burned
12   down that building, etc., etc.  That would be a classic
13   surplusage.
14             Or another thing would be Mr. Jones, who was well
15   known for beating his wife, burnt down that building.  That
16   would be surplusage of a different type.  This doesn't seem to
17   fall into those kind of familiar categories.
18             But let me hear from defense counsel.
19             MR. NAFTALIS:  If your Honor please, I think here this
20   is classic prejudicial surplusage which Judge Weinfeld in the
21   seminal Pope case talked about, because we're not talking about
22   scandalous material or things like that, which your Honor can
23   deal with by not sending the document to the jury, and that --
24   which I know is your practice.
25             THE COURT:  I think I mentioned previously I never

1215egupc

1    send the indictment to the jury.

2             MR. NAFTALIS:  Here, what you have here, as Judge

3    Weinfeld says in the Pope case, is the impermissible delegation

4    of authority to the prosecution to enlarge the charges

5    contained in the indictment.  And he rejected the notion, oh,

6    you can clean this up by a bill of particulars.  He said,

7    quote, according to Judge Weinfeld, a bill of particulars would

8    permit the prosecution to go beyond the grand jury accusation

9    as set forth in the indictment.

10            THE COURT:  Forgive me for interrupting.  That whole

11   argument goes to whether what was presented to the grand jury.

12   The assistant has just represented other companies represented

13   just --

14            MR. NAFTALIS:  I got to tell you that's news to us.

15   And I mean no disrespect to the assistant here, because this

16   case is a little unusual than a lot of cases because we had

17   extensive dialogue with the government about what was being

18   investigated.  And we made extensive presentations of documents

19   and presentations dealing with what was under investigation in

20   this case.

21            And the notion that there was anything other than

22   Goldman Sachs and Procter & Gamble was never -- the word was

23   never uttered in anything.  Indeed, with all respect to the

24   government, they define inside information in this indictment

25   as Goldman Sachs and Procter & Gamble only, nobody else.  And

1215egupc

```
1     I'll find that for you, your Honor.
2              THE COURT:  Well, that would be helpful.
3              While you're finding that, and maybe this is jumping
4     ahead to the bill of particulars, why wouldn't this issue be
5     satisfied by their defining a bill of particulars what the
6     other companies were if they were limited to those that were
7     presented to the grand jury?
8              MR. NAFTALIS:  Well, paragraph 11 of the indictment
9     defines inside information.  And I'm going to pull it out for
10    your Honor.  It says, the insider trading scheme from in or
11    about '08 through January of '09, they participated -- Gupta
12    and Rajaratnam participated in a scheme to defraud by
13    disclosing material, nonpublic information relating to Goldman
14    Sachs and P&G, paren, quote, the inside information, closed
15    quote.
16             THE COURT:  All right.  Well, let me go back to --
17             MR. NAFTALIS:  And --
18             THE COURT:  Hold on just one second.  Let me go back
19    to the government --
20             MR. NAFTALIS:  Could I just -- I'll come back.
21             MR. TARLOWE:  I think we can actually short-circuit
22    all this.  To be clear, the other companies should actually be
23    singular.  There's one other company.  I'll disclose now what
24    it is, and I don't think it's going to come as a surprise to
25    Mr. Naftalis.  The other company is the JM Smucker company.  I
```

1215egupc

1    don't think that's a surprise to Mr. Naftalis.

2          In fact, in one of their letters to us requesting

3    Brady material, one of the requests they made relates to, and I

4    quote, trading in the securities of P&G or the JM Smucker

5    company.  So, again, it's not a surprise to anybody, that

6    having been disclosed that that is the other company.

7          THE COURT:  So that, if you are going to supersede,

8    then maybe the thing to do is just spell that out, and then no

9    one will be left to speculate.

10         MR. TARLOWE:  I think that's a very good suggestion.

11         THE COURT:  Okay.  So, Mr. Naftalis, it sounds to me

12   like -- and I take it the representation is that something

13   regarding that company was presented to the grand jury?

14         MR. TARLOWE:  That's correct, your Honor.

15         THE COURT:  All right.  So it doesn't sound like it's

16   surplusage, given these representations.  I understand that

17   you've come up with a grammatical inconsistency -- arguable

18   grammatical, although I don't know if that's true; depends

19   on -- I need to know more -- with what is the government's

20   theory with respect to the trading -- the company is?

21         MR. TARLOWE:  JM Smucker Company, commonly known as

22   Smucker's.  In or about June of 2008 Procter & Gamble sold its

23   Folgers Coffee business to the JM Smucker company.  And the

24   allegation is that Mr. Gupta disclosed information about that

25   transaction before it was public to Mr. Rajaratnam.

1215egupc

```
 1              THE COURT:  Okay.  So?
 2              MR. NAFTALIS:  So companies plural just means
 3    Smucker's?
 4              THE COURT:  That's what he's saying, correct?
 5              MR. TARLOWE:  That's correct.
 6              THE COURT:  Okay.  So I think we've -- I don't know
 7    whether I granted or denied that motion.  I think we resolved
 8    it.
 9              MR. NAFTALIS:  I think you clarified it.
10              THE COURT:  All right.  Turning to the motion for a
11    bill of particulars -- and I am not going to spend time on
12    the -- I was going to call it a cat fight, but that's the term
13    that I had to use with caution, in light of a different opinion
14    I recently issued -- over the battle over whether the
15    government has or has not responded to requests for information
16    from the defense.
17              The things that the defense wants to know, at least
18    the ones that seem to me to be salient, are the alleged benefit
19    that Gupta received in exchange for passing inside information,
20    the identities of the alleged coconspirators, the other
21    companies which we've now dealt with and the specific duties
22    and obligations Gupta is accused of breaching.
23              I have grave doubts that that last one falls within
24    anything that a bill of particulars is designed to address, but
25    the others sound to me at least what is commonly granted in a
```

1215egupc

1     bill of particulars.

2          Let me find out what the government's position is, and

3     I'm talking about on the identities of coconspirators and on

4     the alleged benefit that Gupta received in exchange for passing

5     inside information.

6          MR. TARLOWE:  Your Honor, with respect to the

7     identities of the coconspirators, that is something that we

8     have agreed to provide and we intend to provide.

9          THE COURT:  You want to put a date on that?

10         MR. TARLOWE:  What we suggested to defense counsel,

11    which we think is a reasonable schedule and is consistent with

12    what your Honor has done in other recent insider trading cases,

13    is that we would provide that, along with any other

14    particulars, on February 15th, which is two weeks after the

15    deadline for filing the superseding indictment and almost a

16    full -- just short of two months before trial, recognizing that

17    there may be a need to amend that as we get closer to trial and

18    we are immersed in trial preparation.  We propose that we would

19    submit any amendments two weeks in advance of trial.

20         THE COURT:  All right.  Before we hear from the

21    defense, what about the benefit?

22         MR. TARLOWE:  Well, as to the benefit, our position is

23    that the benefit -- we have described the benefit in the

24    indictment, and we think the way we've described it is

25    sufficient, and that anything beyond that --

1215egupc

```
1              THE COURT:  Point me to that.
2              MR. TARLOWE:  Absolutely.  Paragraph 25 is the
3   principal paragraph, and then also paragraph eight provides
4   some additional detail.
5              THE COURT:  All right.  25 reads, quote, Rajat K.
6   Gupta, the defendant, provided inside information to Rajaratnam
7   because of Gupta's friendship and business relationships with
8   Rajaratnam.  Gupta benefited and hoped to benefit on his
9   friendship and business relationships with Rajaratnam in
10  various ways, some of which were financial.
11             So it's that second sentence that the defense wants
12  some particularization about.
13             In paragraph eight it does give some of the
14  particulars but also raises some of the same concerns:  Quote,
15  at all times relevant to this indictment Rajat K. Gupta, the
16  defendant, and Rajaratnam had numerous business dealings with
17  each other.  In addition, Gupta and Rajaratnam maintained a
18  personal relationship and friendship.  Their business dealings
19  included the following.  And then there are four
20  specifications, if you will, of business dealings.
21             So, let me go back to defense counsel.  First, as to
22  coconspirators, they're going to give you that.  They propose a
23  schedule.  Let me hear from you on that first.
24             MR. NAFTALIS:  Yes.  There is no justifiable reason
25  for them not to provide this information now.  Originally,
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

15

1215egupc

1    without getting into the problems we've had in getting them to
2    respond to things, they promised that to us on December 2nd.
3    It was only on the eve of -- and then they never delivered on
4    their promise.  And then, you know, then on the eve of this --
5    right before the weekend, they wrote a letter saying, we'll now
6    give it to you February 15th.
7                They know those names.  It's no big secret who the
8    unindicted coconspirators are.  Indeed, in this case they tried
9    much of this case once already against Mr. Rajaratnam.  The
10   Goldman Sachs allegations were the subject of the Rajaratnam
11   trial, so they know who the coconspirators are.  There's no
12   reason for them to play ducks and drakes over this with us.
13   They can tell us to it now.
14               The reason we need those names, those names are people
15   who are potential witnesses.  We want to know who we have to
16   interview, as opposed to being jammed, you know, late in the
17   trial prep.  This is no big imposition on them.  They should be
18   able to give this information to us now so we can defend
19   ourselves.
20               THE COURT:  I'm going to order that those disclosures
21   be made on essentially the same schedule that I set for other
22   things, like the witness list and so forth.  So the names of
23   the coconspirators have to be disclosed in writing by
24   February 9th.  And if there are additions -- and I, frankly,
25   don't expect there to be additions, barring something truly

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1   unusual, given the time that the government has had to review
2   this case.  If there are additions, they need to be provided
3   three weeks before trial.
4            Now, let me go back to defense counsel on the -- what
5   more do you want on or do you think you're entitled to under --
6   on the benefit issue?
7            MR. NAFTALIS:  The answer is we would like to know
8   what the allegation truly is, other than this vague, you know,
9   mumbo jumbo here.
10           Your Honor, this is a case which is different than
11  most insider trading cases.  Indeed, it's different than any
12  insider trading case of which I'm aware.  There may be others
13  who are aware of things.  Our client didn't trade.  That's
14  undisputed.  He had no profit sharing arrangement with
15  Mr.Rajaratnam.  There was no kickback.  None of those things
16  are alleged.  And I think they're all fairly undisputed.
17           So the issue here of what is -- so in this case
18  where -- in this case this benefit is an element of the
19  offense --
20           THE COURT:  It is.  But for better or for worse, the
21  Second Circuit has indicated that unfairly vague benefits can
22  qualify, like friendship.
23           So supposing some hypothetical defendant wrote in his
24  or her diary, I disclosed information to Jones today because
25  I'm trying to cultivate a personal and business relationship

1215egupc

1   with him, and I think I will get the benefit of that from this
2   disclosure.  What more could you specify?  The nature of some
3   of the -- of this relationship, at least as alleged, the nature
4   of this benefit, at least as alleged, may be inherently too
5   vague to be particularized in any greater degree than the
6   indictment has.  On the business side, they do particularize
7   the previous business relationships.
8           So I'm not quite sure what it is you want from them
9   that they could reasonably be asked to provide in this sort of
10  inherently somewhat amorphous situation.
11          MR. NAFTALIS:  Your Honor, the prior business
12  relationships which they spell out, for whatever admissibility
13  or value they may have in the case, really have nothing to do
14  with our request and nothing to do with their allegation,
15  because their allegation says -- which is the second sentence
16  of paragraph 25 -- it said he benefited and hoped to benefit in
17  various ways, undefined, some of which were financial.
18          We would like to know, what's their theory?  What's
19  their allegation there?  They make an allegation -- that
20  sentence is useless in terms of trying to defend this case.  It
21  is useless in terms of giving us any information.  It says, one
22  of the various ways that we hope to benefit and actually
23  benefited, quote, some of which were financial.  Okay.  What
24  were the financial benefits that they allegedly got as a result
25  of tipping him?  It's a simple question.  I'm sorry, Judge.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1      THE COURT:  No, no, that's all right.  My daughters
2  never let me finish a sentence.  Why should lawyers be any
3  different?
4      But let me ask the government.  I agree that the
5  sentence, the second sentence of 25, is the problematic
6  sentence.  What about that?
7      MR. TARLOWE:  Your Honor, I think what your Honor has
8  said in other cases is the government should identify generally
9  what the theory is.  Is it a friendship?  Is it a financial
10  benefit?  Here it's really both.  And we've laid that out in
11  paragraph 25 with some additional detail in paragraph eight.  I
12  don't think --
13      THE COURT:  Paragraph eight is the prior business
14  relationships, yes?
15      MR. TARLOWE:  I think some of them are ongoing
16  relationships that extended into the period of time, into the
17  conspiracy.
18      THE COURT:  Well, let's take that second sentence at
19  paragraph 25 and break it down.  Gupta benefited -- take that
20  before we get to hoped to benefit -- from his friendship and
21  business relation with Rajaratnam, and in various ways, some of
22  which were financial.
23      So what were the financial benefits?  This is what I
24  think is at the heart of what defense counsel has just asked.
25  Friendship stuff may be amorphous, but what is the financial

1215egupc

1    benefit that Mr. Gupta received from giving this inside
2    information allegedly to Mr.Rajaratnam?
3             MR. TARLOWE:  And, your Honor, I think, respectfully,
4    I think that's the type of information that goes beyond the
5    purpose of a bill of particulars, which is, as the Court is
6    well aware, is -- a bill of particulars is only required where
7    the charges are so general that they did not advise the
8    defendant of the specific acts of which he is accused.  I don't
9    think anyone could possibly make the claim credibly in this
10   case that the defendant --
11            THE COURT:  I'm not sure I agree with that, because
12   we're talking about an essential element here.  And the purpose
13   of bill of particulars -- it has two purposes.  One is to
14   provide fair notice.  The other is to allow the invocation of
15   double jeopardy.
16            And focusing on the fair notice requirement, if you
17   don't give the defendant fair notice of what you mean
18   constitutes an essential element of the charge, that quite
19   often is where a bill of particulars is required.
20            MR. TARLOWE:  And I certainly think if we said nothing
21   about benefit, that would be the case.  But we have explained
22   or described what the benefit alleged was.
23            THE COURT:  What was the financial benefit?
24            MR. TARLOWE:  It stems from his business relationships
25   with Rajaratnam.  The defendant certainly knows what

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    relationships he had with Rajaratnam.

2        THE COURT:  No, no, no.  It's never a response to say,

3    well, defendant knows -- we charged him with robbing a bank.

4    He knows how he robbed the bank.  That turns the presumption of

5    innocence on its head.

6        The question is:  What is the financial benefit that

7    you intend to prove?  The friendship benefit, I agree with you,

8    I don't know that that can be reduced to anything more

9    specific.  But the financial benefit I think can.

10       MR. TARLOWE:  In that case, your Honor, then I would

11   propose that we include that information in our letter or the

12   other information we provide on February 9th.

13       THE COURT:  All right.  Mr. Naftalis?

14       MR. NAFTALIS:  Your Honor, we're on a very tight trial

15   schedule.  There is no -- they know what the allegation is.  We

16   have to defend this.  Especially in this case, where they're

17   lacking, as far as we're concerned, any evidence of our client

18   profiting whatsoever from this, which casts real doubt on the

19   credibility of their case.  We need to prepare to defend

20   ourselves.  We've been asking for this information from them

21   since November.  And I'm not going to go into the fact that we

22   don't get anything else, but why can't they give us this now as

23   opposed to making us wait another month?

24       They know the answer to this question.  They could

25   give it to us this afternoon or tomorrow or next Monday or a

1215egupc

1     week, whatever your Honor thinks is reasonable, so we can go
2     out and know what the allegation is and so we can defend
3     ourselves, so we can do whatever investigative work needs to be
4     done, talk to whatever witnesses.  I mean, we want to --
5               THE COURT:  Well, but two months before trial still
6     provides you with very substantial time.  Mr. Gupta is
7     represented by illustrious counsel.  He has substantial
8     resources.
9               But here is what I will do:  I will encourage the
10    government in a superseding indictment to be more specific
11    about any financial benefits, either received or hoped to be
12    received, but I will not require that.  But I will require that
13    they spell them out with reasonable specificity in the
14    providing of information that they are required to provide on
15    February 9th.  So February 9th will be the drop dead date, but
16    I encourage the government to do even better than that by
17    putting it into the superseding indictment.
18              All right.  The next motion is to compel the
19    government to respond to the defendant's Brady requests, which
20    include requests for false statements of government witnesses;
21    witness statements that Gupta was not the source of any inside
22    information, somebody else was; FINRA and SEC investigations of
23    the trading in the indictment; information showing me
24    information that Gupta was considering purchasing a commercial
25    bank, that that information was already public; information

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    regarding that the so-called or allegedly deteriorating

2    relationship between Gupta and Rajaratnam and exculpatory

3    proffers by other witnesses.

4             So let me hear the government.

5             MR. BRODSKY:  Your Honor, they sent us a list of

6    approximately 25 items asking for Brady material.

7             Let me state first, very clearly for Mr. Naftalis -- I

8    think we've told it to him in the past but I'll say it very

9    clearly -- we have no evidence whatsoever that anybody but

10   Mr. Gupta tipped Mr. Rajaratnam regarding Goldman Sachs'

11   earnings, regarding Procter & Gamble's earnings, regarding

12   Procter & Gamble's sales of Folgers to the JM Smucker company

13   and regarding Mr. Warren Buffett's investment in the Goldman

14   Sachs.  We don't have any information anybody other than

15   Mr. Gupta made those tips.

16            Now, we did produce documents to Mr. Naftalis.  We

17   produced wiretaps.  We produced other forms of evidence in

18   discovery already that relate to some of their defenses that

19   they came to our office prior to charging and brought to us.

20   And we did gather documents relating to those so-called

21   defenses; for example, relating to the nature of the

22   relationship between Mr. Rajaratnam and Mr. Gupta.  And we've

23   produced documents and wiretaps and other information relating

24   to that.

25            There is a category of information that they've

1215egupc

1    requested which we don't believe is called for by Brady or
2    Giglio in any way, and we could go through each of those
3    requests. For example, they've asked us to produce any
4    statement or statements of any witness who says he or she is
5    not aware of any wrongdoing by Mr. Gupta. In our view, if we
6    talked to a witness who says, I don't know anything about
7    anything relating to Mr. Gupta, that's not Brady.
8         That's not Giglio if you don't intend to call that
9    witness. Even if we did intend to call that witness, it
10   wouldn't be Giglio; it would be a summary of their statements.
11   So we don't think we should produce that.
12        They've asked us to produce, for example,
13   correspondence the SEC has received relating to some
14   whistleblower. We haven't received any such correspondence.
15   We don't have it in our possession. We shouldn't be asked to
16   produce documents that aren't in our possession. I know
17   they've asked the SEC for such documents. So there are a
18   category of documents that we simply can't produce because we
19   don't agree with their characterization that it would be Brady.
20        Finally, there's a third category which are
21   essentially what we believe are Giglio materials, statements of
22   our witnesses that -- or, for example, Neil Kumar will be a
23   witness at the trial. It's no secret to Mr. Naftalis or
24   Mr. Gupta. And Mr. Kumar has Giglio material relating to his
25   activities, statements he's made about his own tips to

1215egupc

1    Mr. Rajaratnam.  We planned on producing that information at

2    the time of the 3500 material deadline.  So I'm not --

3                THE COURT:  Which is three weeks before trial.

4                MR. BRODSKY:  Which is three weeks before trial.

5                THE COURT:  Considerably earlier than under the law

6    the defense would be entitled to it, but the government was

7    kind enough to consent to that.

8                MR. BRODSKY:  Yes.

9                There is a category, your Honor --

10               THE COURT:  I have one quibble with what you're saying

11   so far, which is, as I've had occasion to point out without

12   success for many years now, it's really Giglio.

13               MR. BRODSKY:  I think I heard you say it in this very

14   courtroom.

15               There's a few other categories, your Honor, I'm happy

16   to go through it, where they sent us a letter asking for, for

17   example, whether any participant in an October 23, 2008,

18   Goldman Sachs board call doesn't recall whether or not the

19   board was informed that Goldman Sachs was losing approximately

20   $2 a share at that time in the quarter.  We don't think it's

21   Brady to inform them whether or not a board member does not

22   recall what took place during a board meeting.  I don't see how

23   that --

24               THE COURT:  So, well, I mean, what it comes down to is

25   this:  I don't think you can -- and I don't suggest that you

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    are -- fault the defense for making these requests because
2    under the law there is a heightened burden on the government if
3    the defense makes a specific Brady request.  So they're making
4    it as specific as they can be.

5         You're saying, I think with some force, that certain
6    of the things they're asking for just aren't Brady, or are not
7    within your requirement to locate or respond to and so forth.
8    So I think what they're entitled to initially is to have that
9    put down in writing with equal specificity, corresponding to
10   each of their requests.

11        Now, where does that stand?  You weren't required to
12   put in any papers here today.  Did you respond in writing to
13   their earlier request?

14        MR. BRODSKY:  We have not responded in writing to
15   their eight-page letter with 25 requests.  We can group and
16   number them together and call them Giglio and tell them we'll
17   be producing -- Giglio.

18        THE COURT:  You can call it what you want.

19        MR. BRODSKY:  We can call them 3500 material and tell
20   them we'll produce it during the 3500 deadline.  And we can do
21   that with some of their other requests, if your Honor would
22   like.

23        THE COURT:  I think they are certainly entitled to a
24   written response, a detailed written response to their request.
25   And I think they're entitled to it by no later than a week from

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

1215egupc

```
 1    today.  If, after receiving that response, the defense then
 2    wants to contest your response, you should jointly call and
 3    we'll set up a very quick, within probably about 48 hours,
 4    conference here in court to resolve those differences.
 5            But now, there may be, from the things you just said,
 6    some things that defense wants to contest right now.  But
 7    otherwise, I think we need the written response from the
 8    government before I can really rule on those.
 9            Anything further from the defense?
10            MR. NAFTALIS:  I take it that they'll be responding
11    item by item?
12            THE COURT:  Yes.  That's what I am directing them to
13    do.
14            MR. NAFTALIS:  Because, you know, some of -- look,
15    your Honor set a date for Brady by February 9th, as I recall.
16    Am I right?
17            THE COURT:  Yes.  And I'm going to resolve this before
18    that.  So they're going to get you -- today is the 5th of
19    January.  They're going to get you their response by the 12th
20    of January.  If, after getting their response, you feel that
21    they're wrong in their response, and I -- you know, my guess is
22    that, human nature being what it is, you will feel that way
23    about at least some of their responses, the two of you will
24    then jointly call chambers and we'll have a day or two later a
25    little hearing just on that.  But I think we have to frame the
```

1215egupc

1   issue more specifically before we have this -- it will be well
2   before February 9th.
3           MR. NAFTALIS:  Since your Honor foresaw some of the
4   things I would have said, I won't repeat them, at least not too
5   much.
6           Obviously we had to write the letter because -- to
7   make sure that we didn't just -- the boilerplate response, we
8   know our obligations, then we get nothing that resembles what
9   we understand to be Brady material.  Some of the things
10  there -- and what our concern was, I think, as stated in the
11  letter, was our interpretation of your Honor's ruling was not
12  that they had to give us the Brady material only on
13  February 9th.
14          THE COURT:  No.
15          MR. NAFTALIS:  It said by no later than --
16          THE COURT:  Actually, on Brady I think what I said was
17  it varies with the kind of Brady.  And that will be true
18  presumably on these more specific requests, too.
19          So there's one thing where someone who you know
20  they're going to call said something falsely exculpatory about
21  his or her own activities.  You don't need a huge amount of
22  advanced notice to make use of that.  It's something elsewhere,
23  there's something that requires an investigation independent of
24  anything they're doing.
25          But I don't see any reason why we can't get this all
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1215egupc

1    fully resolved by the middle of this month, okay?

2             MR. NAFTALIS:  Thank you.

3             THE COURT:  All right.  So the last motion, unless

4    I've missed something, is the motion to suppress the wiretaps.

5    And I will ask the government to, if they wish to, put in a

6    written response.  I don't want to in any way foreclose the

7    possibility of coming out one way or the other on that motion,

8    but essentially this has been ruled on at great length in

9    the Rajaratnam case by Judge Holwell.  I can't remember, but I

10   think it may have also been ruled upon by Judge Sullivan, yes?

11            MR. BRODSKY:  I don't believe Judge -- Judge Sullivan

12   addressed different wiretaps.  Some of the issues are

13   overlapping, such as whether wiretaps could be used for wire

14   fraud that covers insider trading activities.

15            THE COURT:  Now, that, of course, you know, this is a

16   different defendant, so he is entitled to be heard on this

17   issue.  And he may persuade me either by raising new grounds or

18   by persuading me that Judge Holwell had it wrong.  But looking

19   at it realistically, if I were the defense, I would not be too

20   optimistic about this particular motion.  So, since this is

21   also, as I understand it, the main issue on appeal in

22   Rajaratnam, the defense would be guilty of malpractice not to

23   make the motion.  I mean, they've got to preserve it in that

24   sense.  But I'm just trying to deal with the practicalities in

25   the situation.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

```
 1              Having said that, I think the government should put in
 2    a written response.  Can you do that in a week as well?
 3              MR. BRODSKY:  I think we would need a little more time
 4    than a week, your Honor.
 5              THE COURT:  How long do you want for that?
 6              MR. BRODSKY:  Two weeks.
 7              THE COURT:  Yes.  Okay.
 8              And how long, Mr. Naftalis, do you want for reply?
 9              MR. NAFTALIS:  Would a week be okay?
10              THE COURT:  Yes.  Okay.  Then I'll deal with that on
11    the papers without oral argument, unless I feel after reviewing
12    the papers that I need oral argument.
13              MR. BRODSKY:  Your Honor, given the number of issues
14    involved with respect to the wiretaps, may we have permission
15    to have more than 25 pages?  We'll try to keep it to 25 pages.
16              THE COURT:  I have no problem with your having more
17    than 25 pages.  You're assuming it's likely that I might read
18    more than 25 pages.
19              MR. BRODSKY:  I'm hoping.
20              THE COURT:  That's why I added, whatever you -- how
21    much do you want?  We should set a limit, though.
22              MR. BRODSKY:  I think within 40 pages.
23              THE COURT:  Okay, 40 pages.
24              How long does the defense want for its reply?
25              MR. NAFTALIS:  Could we have 20 pages?
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

```
 1              THE COURT:  Yes.

 2              Okay.  All right.  So I think we've dealt with all

 3    that we can deal with today, that is, at least in terms of what

 4    was presented to the Court.  Are there other matters that other

 5    counsel wishes to raise?

 6              MR. NAFTALIS:  I had just one issue, your Honor, sort

 7    of a scheduling issue which was -- I think there was a

 8    conference call with your Honor -- not with your Honor, with

 9    your Honor's clerk, a couple weeks ago.  I apparently wasn't on

10    it.  I was learning about how our legislative branch works in

11    Washington.  And --

12              THE COURT:  You used the word "works" loosely.

13              MR. NAFTALIS:  Or being worked over.  I think your

14    Honor made a ruling regarding disclosure of expert reports.

15              THE COURT:  Yes.

16              MR. NAFTALIS:  And I --

17              THE COURT:  I have that here somewhere.  I know I did

18    rule on that.  Expert disclosures one month before trial.  In

19    other words, March 9th.

20              MR. NAFTALIS:  May I make a request for a modest

21    change in your Honor's scheduling of that?

22              THE COURT:  Go ahead.

23              MR. NAFTALIS:  As I understand the rules, that the

24    defense's obligation to put in an expert report is a reciprocal

25    one after the government has put in theirs.
```

1215egupc

```
 1              THE COURT:  Well, let's --
 2              MR. NAFTALIS:  And --
 3              THE COURT:  That depends.  I mean, you're raising the
 4    right issue, but it's not always the case.  The defense
 5    sometimes puts in an expert on an issue that's different from
 6    what the government's expert is.
 7              MR. NAFTALIS:  No, I agree 100 percent.  And your
 8    Honor has tried a lot more cases than I have.
 9              But what I was suggesting, since apart from the fact
10    that's sort of the intendment of the rules, but secondly, is
11    that whether or not we put in an expert report or whether or
12    not we would go forward with an expert testimony would at least
13    in part be influenced by whether or not the government was
14    coming forward with an expert, because --
15              THE COURT:  I hear you.
16              MR. NAFTALIS:  That's why I think they should go
17    first, is my point.
18              THE COURT:  I understood where you're going.
19              So my law clerk says, and he has the notes, so he said
20    that my ruling was that the prosecutor had to make their expert
21    report on March 9th, and that the -- I should say the
22    proponent, and then the opponent a week later; or three weeks
23    before trial, to be exact.  Three weeks before trial.  That's
24    my normal practice.  I want to make sure you both understand.
25              The party who is raising an expert issue and calling
```

1215egupc

1   it and seeking to call an expert on that issue has to do the
2   report one month before the trial.  The party who is calling an
3   expert simply to respond or filing an expert simply in response
4   to the issue raised by the proponent then has to file their
5   responsive expert report three weeks before trial.
6           But I don't know why we're talking about this in the
7   abstract.  Let me ask the government, and then the defense:
8   Are you planning to call an expert, and if so, on what issue?
9           MR. BRODSKY:  Your Honor, we haven't made a
10  determination.  We're leaning against calling an expert, but we
11  are still trying to figure out our process.
12          THE COURT:  If you called an expert against your
13  presentation, do you know what the issue would likely be?
14          MR. BRODSKY:  No.
15          THE COURT:  That sounds to me like it's very likely
16  you won't call an expert, if you don't know what the issue is.
17          So let me go to defense.  Are you planning on calling
18  an expert?
19          MR. NAFTALIS:  I truly don't know if part -- let's
20  start with something that may be hypothetical.  If they were
21  calling an expert on some subject, we plainly would call one.
22  So --
23          THE COURT:  That's the whole point of the schedule
24  that I just gave.
25          MR. NAFTALIS:  So would it be an inconvenience for me

1215egupc

```
 1    to make the possible suggestion that they make a decision on
 2    this, say, in the next two weeks, and then advise the Court and
 3    us as to whether or not they're going to call one?
 4              THE COURT:  I think that's fair.
 5              MR. NAFTALIS:  If so, on what subject then --
 6              THE COURT:  But both ways.  That is to say, if you --
 7    and it's in my experience particularly in insider trading
 8    cases, it is the defense much more often than the government
 9    that seeks to call an expert, often unsuccessfully; that is to
10    say, often it's not allowed.
11              And I respect that you don't know at this point
12    whether you're going to do it, but all one has to do is look at
13    the insider trading cases that have occurred in this courthouse
14    in the last year, and you'll see that in virtually every one
15    there was at least an attempt by the defense to call an expert,
16    not by the government.
17              So I think two weeks from now, I think that's a good
18    date.  If each side intends to call an expert, they should so
19    state and say what subject, in a general sense, they're going
20    to call the expert on.  That is without prejudice to responsive
21    experts.  So if either of you two weeks from today says we're
22    going to call an expert on X, then the other side automatically
23    has permission to call a responsive expert.  And that will be,
24    then, the proponent's expert would be due a month before trial
25    and the opponent's would be due three weeks before trial.
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

```
 1            MR. NAFTALIS:  Most respectfully, I would respectfully
 2     submit that the government should be obliged in all respects to
 3     go first.  And the reason I say that is they have -- this is a
 4     criminal case.  It's not a civil case.  In a civil case, of
 5     course, that all makes a great deal of sense.  But in a
 6     criminal case, it's their burden.
 7            And in terms of they shouldn't be allowed to sit
 8     back -- I mean, because we don't have to do anything at the
 9     trial, you know.  It's been charged a million times.  We can
10     just sit there and do nothing and all the rest.  But they
11     shouldn't be -- if they're going to call an expert, whether it
12     be -- on the same subject that we would be considering calling
13     an expert, they should go first.
14            THE COURT:  You see, I don't really see that.  It
15     seems to me more akin to what is the situation in a criminal
16     case in an affirmative defense, where the defense first has to
17     raise and alert everyone that they have an affirmative defense.
18     And only then is the government obliged often to prove beyond a
19     reasonable doubt that it's not an affirmative defense.  If
20     they're in this situation, which I think is, from what the
21     government has just said, more likely than not, that they don't
22     satisfy anything wherein that they can't make out their case
23     beyond a reasonable doubt without calling any expert.  So
24     that's why two weeks from today they're not going to list
25     anyone.
```

1215egupc

1        But you've already figured out an issue on which you

2    think an expert can put a hole, can create a reasonable doubt

3    in their position or can create some additional issue that you

4    think will carry the day for you, so you say -- so, well, we're

5    going to call an expert on that, and then they'll respond with

6    their expert.  I don't see that it's anything relating to the

7    burden of proof.

8        MR. NAFTALIS:  Except their expert would have to be

9    called in their case.  And --

10       THE COURT:  Theoretically they could be called in the

11   rebuttal case, if I give them one, which I probably won't.  So

12   you'll get the benefit.  You'll be in great shape, because even

13   though their expert is responding to your expert, I may require

14   that they go first with that.  And how much better could it be

15   for you?  You should be salivating.

16       MR. NAFTALIS:  I'm too old to salivate.

17       Look, obviously we follow whatever your Honor's rules

18   are.

19       THE COURT:  That's the main difference between the

20   lawyers and my daughters.  But, yes, I'm going to leave it as

21   it is.  I hear what you're saying, but --

22       MR. NAFTALIS:  Look, apparently we know their answer

23   is going to come back they're not calling one.  I'm not trying

24   to be -- I'm not trying to put words in my esteemed opponents'

25   mouth, but --

1215egupc

```
 1              THE COURT:  More likely than not.
 2              MR. NAFTALIS:  Even I can read the tea leaves.  But I
 3     think we need more than two weeks to make the judgment on our
 4     side as to whether that's something we're going to do.
 5              THE COURT:  Okay.  Then I'm going to go back to -- I
 6     mean, you were the one who was suggesting the two weeks.
 7              MR. NAFTALIS:  The problem is sometimes you get what
 8     you ask for, right?
 9              THE COURT:  So I'm happy to go with the original
10     position, which is no one has to say anything about whether or
11     not they're going to call an expert until a month before trial.
12     The month before trial, someone who's planning to call an
13     expert will make the full disclosures required as to the
14     expert, and then three weeks before trial, if the other sides
15     may call the expert, they make those disclosures for the
16     expert.
17              MR. NAFTALIS:  I withdraw my arguments that went
18     nowhere.
19              THE COURT:  Anything else we need to take care of?
20              MR. TARLOWE:  Just one other relatively small issue,
21     your Honor.  I think we really just wanted to seek a
22     clarification from the Court, because the two sides seem to
23     have a very different interpretation of what the Court
24     contemplated with respect to reciprocal Rule 16 discovery.
25              We've been asking for that from day one, when we began
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1    producing discovery.  At the initial conference there was a
2    direction from the Court.  As I recall it in the context of
3    discussing 3500 material, the Court ordered the defense to
4    provide reverse disclosures one week before trial.  It was our
5    understanding that --
6            THE COURT:  I think it was -- I think it included a
7    witness list and --
8            MR. TARLOWE:  Correct, your Honor.  But it was our
9    understanding that that was not intended to suggest that the
10   defense need not produce its Rule 16 reciprocal discovery until
11   one week before trial.  We, I think, raised this issue during a
12   conference call with the Court.  The Court's order after that
13   was that if the defense is serving subpoenas on third parties
14   and receiving documents, they should produce those documents
15   promptly upon receiving them.
16           THE COURT:  Yes.
17           MR. TARLOWE:  And the defense agrees with that.
18           But in terms of the Rule 16 reciprocal discovery, as
19   to documents that are already in their possession, they're
20   taking the view that they need not produce those until one week
21   before trial.  And we think that's simply just not fair, and
22   that they should begin producing those now.  And they can
23   produce them on a rolling basis.  But if they got them now, we
24   just don't understand why they would sit on those until one
25   week before trial.

1215egupc

```
 1              MR. NAFTALIS:  First, two things.  I think there's a
 2      little -- I think there's a little misstatement as to what your
 3      Honor ruled on.
 4              When your Honor set the schedule on October 26th, you
 5      made a whole bunch of dates.  And you said, quote, on the
 6      defense side it seems to me that all reverse disclosures
 7      contemplated by the rules should be provided one week before
 8      trial, except for whether or not the defendant is going to take
 9      the stand.  And you set up a procedure that we have to tell
10      that at the close of the government's case.
11              We certainly intend to comply with all of our reverse
12      disclosure obligations, as the Court ruled, including reverse
13      discovery of matters that we intend to put in in our case in
14      chief, as the rule says.  Indeed, we have given the government,
15      as part of our preindictment thing, hundreds and hundreds of
16      pages of documents which support defense themes in this case,
17      organized in binders; basically work product we gave them,
18      documents which showed that there was developing -- this goes
19      to one of our Brady points, of the acrimonies at the time.
20              THE COURT:  Maybe they'll ask you for a bill of
21      particulars.
22              MR. NAFTALIS:  In addition, we gave them analysts'
23      reports that they had never seen before which showed that their
24      arguments about July 29th were specious.  We've given them a
25      ton of reverse disclosures to start with.
```

1215egupc

```
 1              Look, they've dumped two-and-a-half million pages of
 2      documents that we had never seen before, and we've been in this
 3      case a while.  We've seen a lot.  And they're continuing to
 4      dump documents on us.  There have been ten productions running
 5      into the hundreds of thousands of pages dumped on us since the
 6      November 2nd cut-off, where --
 7              THE COURT:  Let me just make sure I understand,
 8      because I --
 9              MR. NAFTALIS:  We're trying --
10              THE COURT:  What is it that you don't want to produce
11      until a week before?
12              MR. NAFTALIS:  Right now we're trying to get -- two
13      things.  One, right now we're just trying to get through the
14      government's discovery to understand what's out there.
15              Secondly, what we would put in evidence in our case in
16      chief, that's a decision you really kind of make further down
17      the line.  We've given them hundreds of pages of stuff already,
18      preindictment.
19              THE COURT:  I'm inclined to stick with the one week,
20      if that's what we're talking about.  In other words, if we're
21      talking about, for example, the exhibits that the defense
22      intends to offer on its case, I think one week is sufficient
23      for that purpose.
24              If there's something else we're talking about, let me
25      hear from the government that -- you know, if I'm missing
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

1215egupc

1     something here.  But I take it if that's what the fight was
2     about, I think one week is sufficient.
3             MR. NAFTALIS:  And with respect to the -- he mentioned
4     something about the subpoena issue.  We've not served any
5     Rule 17 subpoenas in this case.  Obviously I know your Honor's
6     practice.  When you get things under Rule 17(c), you're
7     supposed to give it to the other side.  We certainly intend to
8     comply with that.
9             THE COURT:  Okay.
10            MR. TARLOWE:  Your Honor, on that point, it is our
11    understanding that although they may not serving Rule 17
12    subpoenas, they are serving subpoenas in the SEC action.  And
13    it would seem to us that they can't use that subpoena power in
14    order to circumvent --
15            THE COURT:  Are you going to turn over that stuff as
16    well?
17            MR. NAFTALIS:  Whenever we get it.  We've actually --
18    I can hand up to the Court a letter we sent to Mr. Tarlowe on
19    that, because we advised them -- we've gotten nothing yet in
20    that action.  When we do, I'm happy to give that to them.
21            THE COURT:  So that includes the SEC stuff.  Okay.
22            MR. TARLOWE:  Your Honor, just on the one week issue
23    on the Rule 16 discovery, Mr. Naftalis said that they produced
24    hundreds of pages to us.  So, I mean, should I not expect to be
25    receiving thousands of pages of documents the week before

1215egupc

1    trial?  Because that's what concerns me, frankly.  It's what
2    has happened in other cases.  I know your Honor in the Jiao
3    case fairly recently directed defense counsel to begin
4    producing the Rule 16 reciprocal discovery four weeks prior to
5    trial.

6            So I'm just concerned that one week before trial we're
7    going to get a very substantial volume of documents from the
8    defense, including documents that they probably have in their
9    possession today.

10           THE COURT:  Well, the difficulty I think is that the
11   determination by the defense of what they will be offering on
12   their case as exhibits is, I think, one not easily arrived at
13   by any reasonable defense counsel, until and unless he has a
14   pretty good clear sense of what the government's going to be
15   offering.  To force that disclosure much before one week before
16   trial is, I think, a very difficult burden for any responsible
17   defense counsel because it requires to make decisions that
18   cannot really be made that far in advance of trial, until
19   everything else has coalesced, so to speak.

20           Having said that, if the defense has large quantities
21   of documents of many pages, or even if the individual documents
22   are short, the combined number is very, very large that they
23   think there is a reasonable possibility they might offer, I
24   think they should be encouraged strongly to turn those over in
25   advance.  They don't have to make the final decision on those

1215egupc

1    until the week before trial.  But it gives the government at
2    least the opportunity to begin to assess those.  And, frankly,
3    I don't see how it could possibly prejudice the defense,
4    considering I have to make my final decision at that point.
5    And, you know, if anything, it might require the government to
6    go check out documents that will prove in the end to be
7    irrelevant to the case.  So the prejudice would be to the
8    government, if anything, rather than to the defense.
9         But I'm not going to set at this stage a specific
10    requirement beyond the schedule I've already set.  If it turns
11    out, if the government reports to me that one week before trial
12    50,000 pages were dumped on them that they have never seen
13    before, I will be inclined to take appropriate action to deal
14    with that situation.  But I'm not going to require anything at
15    this point, because I don't know, and I'm not sure a
16    responsible defense counsel knows at this point exactly even
17    the ballpark of what he might put into evidence or not.
18         So I'm going to leave it in that amorphous form for
19    now, without prejudice to the government coming back to me and
20    complaining bitterly, and with reason, if they get a huge
21    amount of materials dumped on them a week before trial.
22         Yes.
23         MR. BRODSKY:  Your Honor, one other clarifying point
24    regarding the defense exhibits a week before trial.
25         In a different -- in another insider trading case that

1215egupc

1   I did recently, the defense took the position that there was an
2   exception to that; that if they were offering documents that
3   they planned to introduce into evidence but they planned on
4   offering it through cross-examination, as opposed to their own
5   case in chief, they said to Judge Sullivan that that was an
6   exception that didn't fall within the one-week disclosure
7   period or the pretrial disclosure period in that case for
8   defense exhibits.  And we took another position.
9           Judge Sullivan ruled for the government and said if
10  the defendant was planning on introducing exhibits through the
11  government's witnesses, that constitutes defense exhibits and
12  should also be produced one week before trial.
13          We would ask your Honor to adopt that position.
14  Otherwise, the defense will be offering all sorts of exhibits
15  through our witnesses and never disclosing them before trial.
16          THE COURT:  I think the argument -- I don't know what
17  occurred before Judge Sullivan.  I think the argument is
18  slightly more refined.  If the defense is introducing a
19  document for its truth, then I think it has to be -- and they
20  know they're going to be offering it, whether it's through a
21  government witness, a defense witness or some other way, like a
22  self-authenticating document, those have to be produced a week
23  before.
24          If the defense is claiming to use a document solely
25  for impeachment purposes, not offering it for its truth, that,

1215egupc

1    I think, can be held back.  That's really critical to the

2    impeachment function of cross-examination.  So that's my point.

3            All right.  Very good.  Anything else?  Good.  Thanks

4    so much.

5            (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25